The HUMANE SOCIETY OF the UNITED STATES, et al., Plaintiffs,

v.

James G. WATT, et al., Defendants.

Civ. A. No. 82–2689.

United States District Court, District of Columbia.

Sept. 29, 1982.

Brice M. Clagett, Ellen Bass, J. Peter Byrne, Michael A. Roth, Covington & Burling, Washington, D.C., for plaintiffs.

J. Vance Hughes, Jose A. Toro, Wildlife and Natural Marine Resources Section, Land and Natural Resources Div., U.S. Dept. of Justice, Washington, D.C., for defendants.

ORDER

JOYCE HENS GREEN, District Judge.

Plaintiffs, the Humane Society of the United States, the Maine Audubon Society, and an individual who is a member of these organizations and who, by avocation, observes birds which are the subject of this action, charge that the regulations of the Fish and Wildlife Service (FWS) governing hunting of black ducks over the 1982–83 season, promulgated on September 17, 1982 under the Migratory Bird Treaty Act (MBTA), 16 U.S.C. § 703 *et seq.,* and after notice and comment pursuant to the Administrative Procedure Act, 5 U.S.C. § 551 *et seq.,* are arbitrary and capricious and not in accordance with law. Plaintiffs believe that hunting must be prohibited in order to save the species. Ultimately they want the regulations invalidated; in the meantime, they seek an injunction halting the start of

the current hunting season for black ducks. Under the FWS regulations, states may open season on black ducks in the Atlantic Flyway region on October 1, 1982 and in the Mississippi Flyway on October 2, or later, if the states choose—the only other restrictions are that no state can have a hunting season longer than 50 days and that all hunting must cease on January 20. In practice, however, according to plaintiffs, the majority of the kill takes place during the first few days of the season. As such, they seek temporary injunctive relief, which request is now before the Court. Two groups, the International Association of Fish and Wildlife Agencies (which includes in its membership the directors of state wildlife agencies from every state) and the Wildlife Legislative Fund (which represents hunters) have sought to intervene. Pending resolution of their motions to intervene, the memoranda filed by them have been treated by the Court as *amicus* briefs.

Although it is clearly impossible to delineate within this brief Order the whole of the parties' arguments, all considered, some comments are appropriate.

While no one contends that black ducks are subject to the Endangered Species Act (which requires the agency to take affirmative steps to increase the population of a species), both sides acknowledge that the number of these ducks has been declining over the years, based on winter survey data. The parties disagree as to the cause of the decline. Plaintiffs adamantly attribute it to excessive hunting, while defendants state that the precise cause is unknown and could include such factors as the transformation of Canadian forests (where the ducks had lived) to agricultural land (which is more suited to other birds, like mallards). Investigation of the causative factors is ongoing.

The factors which the Court must consider when presented with an application for injunctive relief are set forth in the well-known cases of *Washington Metropolitan Area Transit Commission v. Holiday Tours, Inc.*, 182 U.S.App.D.C. 220, 559 F.2d 841 (1977) and *Virginia Petroleum Jobbers Association v. F.P.C.*, 104 U.S.App.D.C. 106, 259 F.2d 921 (1958). The Court must inquire (1) whether the movant has made a strong showing that it is likely to prevail on the merits of its case, (2) whether the movant has shown that without such relief, it will be injured irreparably, (3) whether the issuance of an injunction would substantially harm other parties interested in the proceedings, and (4) where the public interest lies. *Washington Metropolitan Area Transit Commission v. Holiday Tours, Inc.*, 559 F.2d at 843, quoting *Virginia Petroleum Jobbers Association v. F.P.C.*, 159 F.2d at 925.

Because plaintiffs dispute the agency's contention that the black duck is not in danger of irreparable injury, the questions of plaintiffs' likelihood of prevailing on the merits of their claim that the agency's decision was improper and whether irreparable harm would ensue absent the entry of injunctive relief are intertwined.

When FWS reported its new regulations in the Federal Register on September 17, 1982, it articulated in detail why it chose not to follow plaintiffs' proposal that black duck hunting be restricted or closed altogether this year. FWS therein disputed plaintiffs' contention that the duck's decline is at a crisis level. It did conclude nonetheless that a management program for black ducks should be established, which should include restrictions on harvesting. 47 Fed. Reg. at 41253. It reiterated its view, expressed on August 20, 1982 when proposed rules were being considered, that any management program should provide for input from the states within the Mississippi Flyway Council as well as those within the Atlantic Flyway Council (which had drafted a black duck management program providing for kill restrictions), the Canadian Wildlife Service and Canadian provincial wildlife agencies. 74 Fed.Reg. at 36581; 41253. Nevertheless, FWS stated that "it is committed to a program to effect necessary hunting restrictions on black ducks beginning in the 1983–84 hunting season" and that "if agreement [among the various governmental authorities] cannot be reached, the Service will proceed with a 1983–84

 

program of harvest restrictions based on its assessment of what actions are necessary." 47 Fed.Reg. at 41254.

As a result, what happens this year notwithstanding, hunting of black ducks will be restricted next year. Moreover, for this year, these states within the Atlantic Flyway independently have restricted black duck hunting below the federal levels: Maine, Massachusetts, Rhode Island, and Vermont.

Ample documentation of the population and status of the black duck over the past twenty-seven years was presented to the agency during the administrative process by various interested parties including plaintiffs, representing diverse viewpoints. Upon consideration of the nine volume administrative record before the Court, it cannot be said at this juncture that there is evidence of such deficiencies within the agency's procedure or record which would reflect that plaintiffs are likely to prevail on their argument that the rulemaking was arbitrary, and capricious or not in accordance with law. The information within that administrative record does not project essentially that a crisis is imminent for survival of the black duck. Moreover, even assuming for the sake of argument as true plaintiffs' estimates of a population decline of four to six percent over the next year (which defendants contest) and considering those estimates in light of other dangers to the black duck including encroachment by mallards, the Court is not convinced that the species would be unable to repair itself in subsequent years.

In concluding that plaintiffs have not made the requisite showing of irreparable harm, the Court relies in part upon the commitment of the FWS, as expressed in the Federal Register, to issue appropriate hunting restrictions for the 1983–84 season. This conclusion is bolstered by the voluntary and independent actions of the several state wildlife agencies to reduce hunting in those states this year.

As to the other factors to be considered at this time, including public interest and impact on others, there is no doubt that the issuance of injunctive relief would have a substantial, immediate and negative effect upon hunters, who would be deprived of an important portion of their anticipated season of sport, as well as the FWS and state wildlife agencies, which entities plaintiffs asked to be required to embark upon a massive publication effort to inform the public of a last minute alteration of their previously established hunting schedules.

Having considered the record of this case, the briefs filed and arguments raised in open court, together with authorities cited therein, under the standards of *Washington Metropolitan Area Transit Commission v. Holiday Tours, Inc.* and *Virginia Petroleum Jobbers Association v. F.P.C.,* the Court is compelled to deny the interim relief sought by plaintiffs. Accordingly, it is, by the Court, this 28th day of September, 1982,

ORDERED, that plaintiffs' application for a temporary restraining order shall be and hereby is denied.